AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>LG Smartphone Cell Phone<br>Seized as FP&F No. 2021565500028601<br>("Target Device") | ) ) ) ) ) ) ) Case No.  '21 MJ0632 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Genaro Calderon, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Genaro Calderon, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 02/18/2021

*Judge's signature*

City and state: San Diego, California

HON. JILL L. BURKHARDT, U.S. Magistrate Judge
*Printed name and title*



# AFFIDAVIT

I, Genaro Calderon, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

> LG Smartphone Cell Phone
> Seized as FP&F No. 2021565500028601
> ("Target Device")

the ("**Target Device**"), as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Sean Michael GRABOWSKI for transportation of illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2010, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

1

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.  My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.  During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

3

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    e. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

4

## FACTS SUPPORTING PROBABLE CAUSE

11. On February 16, 2021, Border Patrol Agent-Intelligence D. Beresiwsky, was conducting assigned duties in the Campo Border Patrol Station's area of responsibility. At approximately 8:02 AM, Agent Beresiwsky received an automated alert to his government email, regarding a white Jeep Compass that was traveling west on Interstate 8 near the San Diego/Imperial County lines. The alert had been placed on February 14, 2021, by the Boulevard Border Patrol Station's Tactical Operations Center. The alert advised that the Jeep had been rented by an individual who had recently been associated to several alien smuggling events in the area.

12. At the time of the alert, the Interstate 8 westbound Border Patrol Checkpoint, located in Pine Valley, CA, was non-operational due to inclement weather. When the checkpoint is non-operational, the Interstate 8 experiences an increase in smuggling activity due to the closure. At approximately 8:09 AM, Agent Beresiwsky received a second automated alert indicating that the Jeep was now traveling south on Carrizo Gorge Road in Jacumba Hot Springs, CA. Carrizo Gorge Road is a rural north-south road that connects Interstate 8 to Old Highway 80. Old Highway 80 which runs east-west, is only a few hundred yards north of the United States/Mexico International Boundary in this area and is therefore frequently utilized by smugglers looking to pick up their illicit cargo.

13. Agent Beresiwsky contacted Border Patrol Agent G. Alvarez and provided him with the vehicle description, approximate location and his suspicion of the vehicles activity in the area.

14. At approximately 8:24 AM, Agents from the Boulevard Border Patrol Station advised, via service radio, that a white Jeep Compass with a matching license plate was traveling north on Ribbonwood Road from Old Highway 80 and entering Interstate 8 westbound, Agent Alvarez positioned himself on Interstate 8 and observed

the white Jeep pass his location. Agent Alvarez began to follow the Jeep Compass and requested the assistance of an agency marked vehicle to perform a vehicle stop.

15. Border Patrol Agent E. Ferreira, who was wearing a full rough duty uniform and operating an agency marked vehicle, responded to the request. Agent Ferreira caught up to the Jeep Compass and activated his emergency lights and siren. The driver of the vehicle, later identified as the defendant Sean Michael GRABOWSKI, yielded approximately one mile east of Buckman Springs Road on Interstate 8. Agent Alvarez approached the driver side window of the vehicle and identified himself as a Border Patrol Agent. Agent Alvarez questioned GRABOWSKI regarding his citizenship and his relationship with the back seat passengers. GRABOWSKI stated he is a United States citizen and that the back seat passengers were two guys looking for a ride. Agent Alvarez conducted an immigration inspection on the back seat passengers, later identified as material witnesses Manuel MEZA-Ramos and Jose Atanacio PEREZ-Campos. MEZA and PEREZ each stated they are citizens of Mexico without immigration documents which would allow them to enter or remain in the United States legally. At approximately 8:36 AM, Agent Alvarez placed MEZA, PEREZ and GRABOWSKI under arrest.

16. While agents were completing an inventory search of the vehicle Sean Michael GRABOWSKI was driving they discovered, an LG Smartphone Cell Phone (**"Target Device"**). The Target Device was discovered on the front passenger seat of the vehicle and was subsequently seized. The LG Smartphone Cell Phone (**"Target Device"**) was subsequently seized. Both material witnesses sat in the back seat. Only GRABOSKI was in the front seat.

17. Material witnesses MEZA and PEREZ admitted to being citizens of Mexico, illegally present in the United States, and not having any documents that would allow them to enter or remain in the United States legally. MEZA and PEREZ admitted to making smuggling arrangements and agreed to pay $8000.00 USD. MEZA and PEREZ stated that

6

they illegally crossed into the United States the afternoon of February 15, 2021, by climbing over the United States/Mexico International Boundary Fence using a ladder. MEZA and PEREZ stated that once they were in the United States they were guided by cellphone towards Interstate 8. PEREZ stated that he was instructed to wait until the next morning, February 16, 2021, for a ride. MEZA and PEREZ stated that at approximately 8:00 AM a white vehicle stopped at their location. MEZA stated that the driver rolled the window down and yelled "go, go, go." MEZA and PEREZ described the driver as a tall white male with tattoos. MEZA and PEREZ stated that once inside the vehicle they were instructed to lay down. MEZA and PEREZ estimated that they were inside the vehicle for approximately 10-20 minutes before the Border Patrol pulled them over. MEZA and PEREZ were each shown a photo lineup and both were able to identify Sean Michael GRABOWSKI as the driver of the vehicle.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on January 16, 2021, through February 16, 2021.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

24. Because the **Target Device** was seized at the time of GRABOWSKI'S arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **January 16, 2021 through February 16, 2021.**

25. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*

Genaro Calderon
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of February, 2021.

*[signature: Jill Burkhardt]*

Hon. Jill L. Burkhardt
United States Magistrate Judge

10

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

LG Smartphone Cell Phone
Seized as FP&F No. 20215655000286O1
("Target Device")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **January 16, 2021 through February 16, 2021**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.